UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

NADIA RUPNIAK,

              Plaintiff,

    -against-

ALDER BIOPHARMACEUTICALS, INC.,
ROBERT AZELBY, PAUL CARTER, PAUL
CLEVELAND, JEREMY GREEN, A. BRUCE
MONTGOMERY, HEATHER PRESTON,
CLAY B. SIEGALL, and WENDY YARNO,

            Defendants.

------------------------------------------ X

CASE NO.: __19-cv-9025__

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Nadia Rupniak ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.    This is an action brought by Plaintiff against Alder BioPharmaceuticals, Inc. ("Alder" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Alder, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9").  Plaintiff's claims arise in connection with the proposed tender offer by H. Lundbeck A/S, a Danish *aktieselskab* ("Lundbeck" or "Parent"), through Lundbeck and Lundbeck LLC, an

indirect wholly owned subsidiary of Parent ("Payor"), and Violet Acquisition Corp., a direct wholly owned subsidiary of Payor ("Purchaser") to acquire all of the issued and outstanding shares of Alder (the "Tender Offer").

2.      On September 16, 2019, Alder entered into an Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, Parent, Payor, Purchaser pursuant to which Purchaser will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly owned subsidiary of Parent (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each shareholder of Alder common stock will be entitled to receive $18.00 in cash (the "Offer Price"), plus one non-tradeable Contingent Value Right that entitles them to an additional $2.00 per share upon approval of eptinezumab by the European Medicines Agency (the "CVR" and together with the Offer Price, the "Merger Consideration").

4.      On September 23, 2019, in order to convince Alder's public common stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

5.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) financial projections for Alder; (ii) the Background of the Offer and Merger; and (iii) the valuation analyses performed by Alder's financial advisor, Centerview Partners LLC ("Centerview"), in support of its fairness opinion.

6.      The Tender Offer is scheduled to expire at one minute after 11:59 p.m. Eastern Time, on October 15, 2019 (the "Expiration Time"), unless otherwise agreed to in writing by Lundbeck and the Company. It is imperative that the material information that has been omitted

from the Recommendation Statement be disclosed to the Company's shareholders prior to the Expiration Time so they can properly determine whether to tender their shares.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.  Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Alder's public common stockholders sufficiently in advance of the Expiration Time or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

9.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78a, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.   Indeed, Alder's common stock trades on the Nasdaq, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Alder common stock.

12.    Defendant Alder is a Delaware corporation with its principal place of business located at 11804 North Creek Parkway South, Bothell, Washington 98011. The Company discovers, develops, and commercializes therapeutic antibodies to transform the treatment paradigm for patients with migraine in the United States, Australia, and Ireland.  Alder's common stock trades on the Nasdaq under the ticker symbol "ALDR."

13.    Defendant Paul Cleveland ("Cleveland") is, and has been at all relevant times, a director of the Company. Defendant Cleveland has been a member of the board of directors since August 2015 and Chairman of the board since November 2018.

14.    Defendant Robert Azelby is, and has been at all relevant times, a director of the Company.

15.    Defendant Paul Carter is, and has been at all relevant times, a director of the Company.

16.    Defendant Jeremy Green is, and has been at all relevant times, a director of the Company.

17.    Defendant A. Bruce Montgomery, M.D. is, and has been at all relevant times, a

director of the Company.

18.     Defendant Heather Preston, M.D. is, and has been at all relevant times, a director of the Company.

19.     Defendant Clay B. Siegall, P.H.D. is, and has been at all relevant times, a director of the Company.

20.     Defendant Wendy Yarno is, and has been at all relevant times, a director of the Company.

21.     The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Alder, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Alder operates as a clinical-stage biopharmaceutical company. It discovers, develops, and commercializes therapeutic antibodies to transform the treatment paradigm for patients with migraines in the United States, Australia, and Ireland. The company's lead product candidate is eptinezumab, a monoclonal antibody (mAb) inhibiting calcitonin gene-related peptide, which is in the late-stage clinical development for the prevention of migraine. It also develops ALD1910, a preclinical mAb that inhibits pituitary adenylate cyclase-activating polypeptide-38 for migraine prevention; and Clazakizumab, a mAb inhibiting the pro-inflammatory cytokine interleukin-6 that has completed two Phase 2b clinical trials. The company has strategic collaboration with CSL Limited for the development of clazakizumab as a therapeutic option for solid organ transplant rejection.

23.     Lundbeck is a Dutch multinational pharmaceuticals company headquartered in Valby, Denmark. Lundbeck engages in the research, development, production, and sale of

pharmaceuticals for the treatment of psychiatric and neurological disorders in Europe, North America, and internationally. The company's principal products include Abilify Maintena for schizophrenia; Brintellix/Trintellix to treat depression; Northera for treating symptomatic neurogenic orthostatic hypotension; Onfi for Lennox-Gastaut syndrome; and Rexulti to treat depression/schizophrenia. It also provides Azilect for treating Parkinson's disease; Cipralex/Lexapro for depression; Ebixa to treat Alzheimer's disease; Sabril for treating epilepsy; and Xenazine for chorea associated with Huntington's disease, as well as other products. The company sells its products primarily to distributors of pharmaceuticals, pharmacies, and hospitals.

24.     On September 16, 2019, the Board caused the Company to enter into the Merger Agreement.

25.     Pursuant to the terms of the Merger Agreement, the Company's current shareholders only expect to receive $18.00 in cash for each share of Alder common stock they own, plus the right to receive $2.00 in cash per share, upon the terms and subject to the conditions set forth in the Offer to Purchase.

26.     On September 16, 2019, the Company issued a press release announcing the Proposed Transaction, which stated in relevant part:

> **Lundbeck to acquire Alder BioPharmaceuticals –
> a company committed to transforming migraine
> treatment and prevention – in a transaction
> valued at up to USD 1.95 billion net of cash**
>
> Valby, Denmark and Bothell, Washington, USA, 16 September 2019 - H. Lundbeck A/S (Lundbeck) and Alder BioPharmaceuticals (NASDAQ: ALDR) (Alder) today announced a definitive agreement for Lundbeck to acquire Alder. Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) that entitles them to an additional USD 2.00 per share upon approval of

eptinezumab by the European Medicines Agency (EMA), representing a total potential consideration of USD 20.00 per share. The transaction is valued at up to USD 1.95 billion (approximately DKK 13 billion) net of cash, on a fully diluted basis.

Alder is a clinical-stage biopharmaceutical company committed to transforming migraine treatment through the discovery, development and commercialization of novel therapeutic antibodies. Through this acquisition, Lundbeck will continue to expand the range of brain diseases for which the company brings its leading and best-in-class therapies to patients. In addition, by acquiring Alder, Lundbeck will further enhance its capabilities to deliver future biological innovations in brain diseases.

Alder is developing eptinezumab for the preventive treatment of migraine in adults. Eptinezumab is an investigational monoclonal antibody (mAb) that is administered as a quarterly 30-minute IV infusion. Eptinezumab was designed for immediate and complete bioavailability with high specificity and strong binding for suppression of calcitonin gene-related peptide (CGRP), a neuropeptide believed to play a key role in mediating and initiating migraines. If approved by the U.S. Food and Drug Administration (FDA), it will be the first IV CGRP therapy for migraine prevention. Alder is also developing ALD1910, a mAb designed to inhibit pituitary adenylate cyclase-activating polypeptide (PACAP) for migraine prevention. Eptinezumab, together with ALD1910, will help establish Lundbeck as an emerging leader in migraine and other pain syndromes.

Alder submitted a Biologics License Application (BLA) to the FDA for eptinezumab in February 2019 and the FDA has set a Prescription Drug User Fee Act (PDUFA) action date of 21 February 2020. Lundbeck expects to submit eptinezumab for approval to regulatory authorities in the European Union during 2020, followed by submissions for approval in other regions around the world including China and Japan.

**Strategic benefits**

The proposed transaction is anticipated to significantly strengthen Lundbeck's business as early as 2020, accelerating the build of Lundbeck's late-stage pipeline and providing access to new capabilities in the monoclonal antibody field. The addition of eptinezumab will expand Lundbeck's leading global brain disease franchise. Lundbeck intends to leverage its proven expertise in neuroscience, and its highly effective organization across 56 countries, to maximize the opportunity to serve patients suffering

from brain diseases, including migraine.

The acquisition of Alder will support Lundbeck's aim to deliver long-term sustainable growth and is consistent with capital allocation priorities. The transaction is expected to accelerate and diversify Lundbeck's revenue growth with the expected U.S. launch of eptinezumab for preventive treatment of episodic and chronic migraine in 2020 and the expected expansion of indications for the product. Lundbeck will gain an early-stage antibody, ALD1910, against a separate target for migraine and other pain syndromes with the potential to leverage the expertise in migraine across a broader product offering. Lundbeck will also gain access to a team with strong monoclonal antibody expertise, accelerating Lundbeck's capabilities in this arena. The transaction is expected to be core EPS accretive in 2023 assuming FDA approval in the first quarter of 2020 followed by regulatory approvals in other regions including Europe.

*"As a global leader in neuroscience research with products registered in more than 100 countries and a strong network of neurology specialists, Lundbeck is the ideal partner to advance Alder's mission of changing the treatment paradigm for migraine prevention. We believe this positions eptinezumab for a successful launch both in and outside of the United States," **said Bob Azelby, Alder's president and chief executive officer.** "Importantly, today's news provides Alder shareholders with significant and immediate cash value, as well as the ability to benefit further once eptinezumab is approved by the EMA. Looking ahead, we expect Lundbeck will leverage Alder's expertise in antibody development to explore additional indications for eptinezumab and continue the development of ALD1910."*

**Terms, closing conditions and financing**
Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) of USD 2.00 per share. The upfront cash consideration represents a 79% premium to Alder's shareholders based on the closing price on 13 September 2019 and an approximately 3% discount based on the 52-week high share price.

The non-tradeable CVR will be paid upon the approval by the European Commission of a "Marketing Authorization Application" in the European Union, through the centralized procedure. The terms of the CVR payment reflect the parties' agreement over the sharing of potential economic upside benefits from such approval.

There can be no assurance such approval will occur or that any contingent payment will be made.

Lundbeck will acquire any shares of Alder not tendered into the tender offer through a merger for the same per share consideration as will be payable in the tender offer. The merger will be affected as soon as practicable after the closing of the tender offer.

The Board of Alder has unanimously approved the transaction and Alder will file a recommendation to shareholders recommending they tender their shares to Lundbeck. The transaction is expected to close in the fourth quarter of 2019, subject to customary closing conditions, including the tender of more than 50% of all shares of Alder outstanding at the expiration of the offer and receipt of required regulatory clearances, which includes a Hart-Scott-Rodino review in the U.S. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Lundbeck expects to fund the acquisition through existing cash resources and bank financing.

**Advisors**
For Lundbeck, MTS Health Partners and PJT Partners are acting as the exclusive financial advisors and Baker McKenzie is acting as legal advisor in this transaction. For Alder, Centerview Partners is acting as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP and Cooley LLP are acting as legal advisors.

**Financial guidance**
If closed, the acquisition of Alder will impact Lundbeck's financial guidance for 2019. While the transaction is not expected to have impact on revenue in 2019, it is expected to be dilutive to both EBIT and cash flow for the year.

In Alder's interim report for the second quarter of 2019, the net loss for the first six months was USD 176.3 million. The company maintained its full year guidance for 2019 of net cash used in operating activities and purchases of property and equipment to be in the range of USD 285 to USD 315 million. The majority of the spend is focused on ensuring that Alder is prepared for the potential launch of eptinezumab in the first quarter of 2020, including advancing eptinezumab's supply chain, building commercial inventory, continuing to build out Alder's commercial footprint and other pre-launch market readiness activities.

The expected impact from the transaction on Lundbeck's profitability in 2019 will depend on the timing of the closing of the transaction. However, on a pro forma basis assuming the transaction is closed on 1 November 2019, Lundbeck expects to incur transaction costs of approximately 200 million related to the acquisition of Alder and integration and retention costs of DKK 400-500 million. Furthermore, Lundbeck will recognize two months (on pro-forma basis) of Alder's operating costs, which is estimated at DKK 325-400 million. Lundbeck's guidance for core EBIT will only be impacted by the recognition of Alder's operating costs.

As described above, the transaction is expected to close in the fourth quarter of 2019, subject to customary closing conditions. There can be no assurance that the transaction will be closed before, on or after 1 November 2019, or on any specific timeline or by and specific date, or at all.

Lundbeck confirmed the transaction is not expected to result in any change to its current dividend policy and continues to expect a pay-out ratio of 30-60% for 2019.

**The Recommendation Statement Omits Material Information**

27.     On September 23, 2019, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for Alder's public common stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

28.     First, the Recommendation Statement fails to fully disclose Alder's financial projections (the "Management Projections"). The Management Projections were "based on certain internal assumptions about the probability of technical success and regulatory approval, launch

timing, epidemiology, pricing, sales ramp, market growth, market share, competition and other relevant factors relation to the commercialization of Alder's product candidates." *See* Recommendation Statement at 26. However, the Recommendation Statement fails to even partially disclose any of those material assumptions.

29.     The Management Projections consist of three scenarios: Case A, Case B, and Case C. Case B assumes that eptinezumab has a U.S. cumulative probability of success of 95% for the treatment of chronic migraines and an ex-U.S. cumulative probability of success of 90% for the treatment of chronic migraines. The Recommendation Statement provides the unlevered free cash flows for Case B, but not Case A nor Case C, those unlevered free cash flows must also be disclosed in order for stockholders to evaluate the adequacy of the Merger Consideration for themselves.

30.     Moreover, the components for unlevered free cash flows must also be disclosed. The failure to disclose the line-item projections that compose Alder's unlevered free cash flows renders the Recommendation Statement materially incomplete and misleading because non-GAAP numbers are inherently misleading. Contrary to GAAP metrics, non-GAAP figures are not standardized and, consequently, can be manipulated and easily taken out of context.

31.     Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not.  Shareholders cannot hope to replicate management's inside view of a company's prospects.  The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making.

32.     If a Recommendation Statement discloses financial projections and valuation information, such **projections must be complete and accurate**.  The question here is not the duty

to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths**.  Accordingly, Defendants have disclosed some of the projections relied upon by Centerview, but have omitted the above-mentioned projections. Thus, their omission renders the projections disclosed on pages 27-28 misleading.

33.     Second, the Recommendation Statement fails to provide the key inputs and assumptions regarding Centerview's fairness opinion.

34.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following used in the analysis: (i) the key inputs and assumptions underlying the assumption that Alder's unlevered free cash flows would decline at a rate of 80% year-over-year after December 31, 2037; and (ii) the inputs and assumptions underlying the calculation of the discount rate range of 11.0% to 13.0%.  *See* Recommendation Statement at 34.

35.     These key inputs are material to Alder's shareholders, and their omission renders the summary of Centerview's *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For

> *example, a change in the discount rate by one percent on a stream*
> *of cash flows in the billions of dollars can change the discounted*
> *cash flow value by tens if not hundreds of millions of dollars…* This
> issue arises not only with a discounted cash flow analysis, but with
> each of the other valuation techniques. *This dazzling variability*
> *makes it difficult to rely, compare, or analyze the valuations*
> *underlying a fairness opinion* **unless full disclosure is made of the**
> **various inputs in the valuation process, the weight assigned for**
> **each, and the rationale underlying these choices**. The substantial
> discretion and lack of guidelines and standards also makes the
> process vulnerable to manipulation to arrive at the "right" answer
> for fairness.  This raises a further dilemma in light of the conflicted
> nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Alder shareholders

cannot evaluate for themselves the reliability of Centerview's *Discounted Cash Flow Analysis*,

make a meaningful determination of whether the illustrative present value per share reference

ranges reflect the true value of the Company or was the result of Centerview's unreasonable

judgment, and make an informed decision regarding whether to tender their shares in the Tender

Offer.

36.     With respect to Centerview's *Selected Public Company Analysis*, the

Recommendation Statement fails to disclose the individual multiples Centerview calculated for

each of the companies considered in the analysis.  *See* Recommendation Statement at 31-32.  A

fair summary of the *Selected Public Company Analysis* requires the disclosure of the individual

multiples for each company utilized; merely providing the revenue multiples that a banker

observed is insufficient, as shareholders are unable to assess whether the banker utilized reasonable

comparable companies, or, instead, selected unreasonable companies in order to make the Offer

Price appear more favorable. The failure to disclose such information further precludes Alder

shareholders from evaluating for themselves the reliability of Centerview's *Selected Public*

*Company Analysis* and the fairness of the Offer Price, and make an informed decision regarding

whether to tender their shares in the Tender Offer.

37.     Similarly, with respect to Centerview's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and premiums Centerview observed for each of the companies considered in the analysis.  *See* Recommendation Statement at 32-33.  For the same reasons mentioned above, the failure to disclose the individual multiples and premiums for each of the 6 transactions that were reviewed and analyzed renders the summary of the analysis materially incomplete and misleading.     Additionally, the Recommendation Statement fails to disclose the Company's estimated fully-diluted shares outstanding as of October 31, 2019. The failure to disclose such information further prevents Alder stockholders from evaluating for themselves the reliability of Centerview's *Selected Precedent Transactions Analysis* and the fairness of the Offer Price, and make an informed decision regarding whether to tender their shares in the Tender Offer.

38.     Third, the Recommendation Statement fails to fully disclose the *Background of the Offer and Merger*. The Recommendation Statement indicates that Alder and eleven parties entered into non-disclosures, two of which contained standstill agreements, but fails to disclose whether those two agreements contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. *Id*. At 13. The express communication of the existence of such provisions is material to Alder's shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. If those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the

agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the non-disclosure agreements the Company entered into in the *Background of the Offer and Merger* section of the Recommendation Statement misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

39.     Defendants' failure to provide the foregoing material information renders the statements in the Recommendation Statement false and/or materially misleading.

40.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Time, Plaintiff will be unable to make an informed decision concerning whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

43.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation

Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

47.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

48.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act**

**and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

51.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

52.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

53.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

54.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

55.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

56.     The misrepresentations and omissions in the Recommendation Statement are

material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed

decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

### (Against all Defendants for Violations of Section 20(a) of the Exchange Act)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

58.     The Individual Defendants acted as controlling persons of Alder within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers

and/or directors of Alder, and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the incomplete and misleading statements contained in the

Recommendation Statement filed with the SEC, they had the power to influence and control and

did influence and control, directly or indirectly, the decision making of the Company, including

the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Recommendation Statement and other statements alleged by Plaintiff to be

misleading prior to and/or shortly after these statements were issued and had the ability to prevent

the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The Recommendation Statement contains the

unanimous recommendation of each of the Individual Defendants to approve the Tender Offer.

They were thus directly involved in preparing the Recommendation Statement.

61.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily injunction enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 27, 2019               **MONTEVERDE & ASSOCIATES PC**

By: _/s/ Juan E. Monteverde_
    Juan E. Monteverde (JM-8169)
    The Empire State Building 350 Fifth
    Avenue, Suite 4405 New York, NY 10118
    Tel:(212) 971-1341
    Fax:(212) 202-7880
    Email: jmonteverde@monteverdelaw.com

    *Attorneys for Plaintiff*